## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

United States of America,                    Case No. 22-cr-42 (DWF/DTS)

     Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

Mariano Duran Perez (2),

     Defendant.

---

Mariano Duran Perez is charged with conspiracy to possess with intent to distribute methamphetamine. Indictment, Dkt. No. 32. He moves to suppress statements he made at his second interview at the Hennepin County Jail on January 11, 2022. Motion, Dkt. No. 68. Perez asserts his *Miranda* rights were violated because he clearly and unambiguously invoked his right to counsel and did not initiate further conversation, but the police nonetheless continued to question him. Def. Mem. 1, 7, Dkt. No 106. The Government contends that Perez "did not . . . sufficiently clearly" invoke his right to counsel but rather waived it following the officer's clarifying questions. Gov't Mem. 9-10, 12, Dkt. No. 117. For the reasons discussed below, the Court recommends his motion to suppress be granted.

### FINDINGS OF FACT

Perez was interviewed twice at the Hennepin County Jail on January 11, 2021. Hrg. Tr. 71.[1] Both interviews were conducted by Minnetonka Police Officer Larissa Johnson and Hennepin County Deputy Sheriff Antonio Patsy. Hrg. Tr. 49-51, 71. Officer Johnson spoke English and Spanish, while Deputy Patsy spoke only English. Hrg. Tr. 45-

---

[1] A transcript of the July 7, 2022 evidentiary hearing is at Docket No. 105.

46, 51, 60, 73. Perez spoke only Spanish during the interviews. Hrg. Tr. 50, 53, 60. Deputy Patsy does not understand Spanish. Hrg. Tr. 73, 75.

No audio recording or written transcript of the first interview is in the record before the Court, and Perez has not moved to suppress any statements made during that interview. Officer Johnson and Deputy Patsy testified that Deputy Patsy read the *Miranda* warning in English, then Officer Johnson read it in Spanish. Hrg. Tr. 50, 73. Perez waived his *Miranda* rights and answered questions. Hrg. Tr. 50, 73. Deputy Patsy testified that they stopped the interview because the information they were getting from Perez conflicted with information from a co-defendant who was in a different interview room at the jail. Hrg. Tr. 81-82. After stopping Perez's interview, they talked to the co-defendant. Hrg. Tr. 82.

The second interview started about 30 minutes after the first one ended. Hrg. Tr. 82. It lasted 16 minutes 5 seconds. Gov't Ex. 2 (audio recording).[2] The first 5 minutes 50 seconds of the interview, the portion pertaining to the *Miranda* issue, are transcribed and translated. Gov't Ex. 2A.[3] Officer Johnson testified her role was to facilitate communications between Deputy Patsy and Perez but that she did not always translate word-for-word what was said. Hrg. Tr. 60-61, 63. She was acting as a law enforcement officer at the interview, not an independent interpreter. Hrg. Tr. 60.

---

[2] The chart on page 6 of the Government's memorandum [Dkt. No. 117] incorrectly identifies the recording and transcript as exhibits "3" and "4." They were designated as Exhibits 2 and 2A at the hearing, and both the Government and Perez cite them as such in their legal memoranda.

[3] The written transcript and translation is attached to Perez's motion. *See* Dkt. No. 68-1.

Deputy Patsy read the *Miranda* warning in English, then Officer Johnson began reading it in Spanish. Gov't Ex. 2A.[4] After advising Perez of his right to remain silent, she advised him of his right to counsel:

| Line 15 | Johnson | You have the right to consult with an attorney, and that such attorney be present during the questioning. If you cannot pay for the services of an attorney, one will be appointed to you free of charge so that he can advise you before and during any questioning, if you wish. |
|---------|---------|---|

*Id.* Perez then asked questions and engaged in a dialogue with Officer Johnson about having an attorney with him in court, affording an attorney, and getting a different attorney after he appears before a judge. *Id.* Officer Johnson explained to Deputy Patsy the questions that Perez was asking her. *Id.* Officer Johnson and Perez then had the following exchange:

| Line 36 | Johnson | If you want an, an attorney, even when you're with the judge and if you can pay {on behalf of/for} one, that's fine, if you can pay {on behalf of/for} one {on behalf of/for} (an attorney.) |
|---------|---------|---|
| Line 37 | Perez | (No.) But I can't. Tomorrow, I can't. *Maybe*, in a (week once I get the money together.) |
| Line 38 | Johnson | (Okay. But,) but now I'm asking if you want an attorney here, now. |
| Line 39 | Perez | Oh, okay. Yes. Yes, well, yes. |
|         | Johnson | Do you want an attorney her[e]-- |
| Line 40 | Perez | Yes. |
| Line 41 | Johnson | --now? |

---

[4] Officer Johnson is identified in the transcript as "FV1" Female Voice One; Deputy Patsy is "MV1" Male Voice One; and Perez is "MV2" Male Voice Two. *See* Gov't Ex. 2A at 2 (Transcript/Translation Key). The original Spanish words and sentences are transcribed in Gov't Ex. 2A but are omitted in this Report and Recommendation. Only the English translation is reproduced here. Words or sentences that are italicized were originally uttered in English (not in Spanish and then translated). *See id.*

| Line 42 | Perez   | Here now? |
|---------|---------|-----------|
| Line 43 | Johnson | *So*, let me read, okay? |
| Line 44 | Perez   | Okay. But -- |
| Line 45 | Johnson | If y -- |
| Line 46 | Perez   | -- I'd rather have my attorney here with me. |

Gov't Ex. 2A.

Officer Johnson testified her question in Line 38 was unambiguous and she posed it to Perez in order to clarify whether he wanted a lawyer right now at the interview. Hrg. Tr. 63-64. She neither translated nor summarized Perez's "yes" answers in English for Deputy Patsy. Hrg. Tr. 65-66, 79-80; Gov't Ex. 2A. She also did not stop questioning Perez. Hrg. Tr. 64-65. Instead, she summarized for Deputy Patsy her earlier dialogue with Perez regarding the court process and affording a lawyer. *Id.* She told Deputy Patsy she asked Perez whether he wants a lawyer right now, but she did not tell him Perez had answered "yes" to her questions:

| Line 47 | Johnson | *He's asking questions about a lawyer. Um, He keeps asking about the court process with the judge. Whether or not he can't afford a lawyer right now, today, but then tomorrow his family might be able to pay for a lawyer.* |
|---------|---------|-----------|
| Line 48 | Patsy   | *Okay.* |
| Line 49 | Johnson | *And I explained to him, I'm asking you right now, do you want a lawyer present?* |
| Line 50 | Patsy   | *Mm-hm.*<br>*So, you can continue to talk to us right now without a lawyer, or you can choose not to talk to us and have a lawyer in court. And then, you'll be done talking to us.* |
| Line 51 | Johnson | *So,* your, you ca- you can talk with us now without an attorney and tell the truth, or if you want an attorney here, now, we have [sic] done. We are not going to talk to you. |

| Line 52 | Perez   | Mm, okay. Okay, that's fine. |
| Line 53 | Johnson | Okay? Can I, can I read? |
| Line 54 | Perez   | Mm, yes. |
| Line 55 | Johnson | Okay. If you can't pay for the services of an attorney, an attorney will be appointed to you free of charge so that {he/she} can advise you before and during any questioning, if you wish. |
| Line 56 | Perez   | Mm-hm. |
| Line 57 | Johnson | You have the right to end any questioning at any time. |
| Line 58 | Perez   | Mm-hm. |
| Line 59 | Johnson | Do you understand which ones are your rights? |
| Line 60 | Perez   | Mm-hm. *Yeah.* |
| Line 61 | Johnson | Yes? Or no? |
| Line 62 | Perez   | Mm-hm. |
| Line 63 | Johnson | Yes? Or no? |
| Line 64 | Perez   | Yes. |
| Line 65 | Johnson | Yes. Do you want to waive the aforementioned rights and talk to us now? |
| Line 66 | Perez   | Yes, I am going to talk to you guys. |

Gov't Ex. 2A. Officer Johnson conceded that her question in Line 51 is not part of the *Miranda* warning. Hrg. Tr. 68. She testified that, despite Perez's "yes" answers to her questions whether he wanted counsel "here, now," subjectively it was unclear to her, and she continued questioning him for purposes of clarification. Hrg Tr. 53-54, 63-67.

**CONCLUSIONS OF LAW**

## I.    Legal Standard

A person facing custodial interrogation must be informed that, under the Fifth Amendment, "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Statements obtained during a custodial interrogation without proper warning and waiver of these rights are not admissible against the defendant. *Id.*

A request for counsel must be "clear and unambiguous." *United States v. Mohr*, 772 F.3d 1143, 1145-46 (8th Cir. 2014). Determining whether the accused actually invoked his right to counsel is an objective inquiry. *Davis v. United States,* 512 U.S. 452, 458-59 (1994). He must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459. Once an accused has invoked his right to counsel, "courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith v. Illinois,* 469 U.S. 91, 95 (1984) (per curiam) (citing *Edwards v. Arizona,* 451 U.S. 477, 485, 486 n.9 (1981)).

The Government bears the burden of proving the validity of a *Miranda* waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168 (1986). "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to

further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards,* 451 U.S. at 484; *see also Smith*, 469 U.S. at 92 ("Under *Miranda* and *Edwards,* . . . an accused's postrequest responses to further interrogation may not be used to cast doubt on the clarity of his initial request for counsel.").

The Supreme Court has stated that "*Edwards* set forth a 'bright-line rule' that *all* questioning must cease after an accused requests counsel." *Smith,* 469 U.S. at 98 (citation omitted). "In the absence of such a bright-line prohibition, the authorities through 'badger[ing]' or 'overreaching' — explicit or subtle, deliberate or unintentional — might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Id.* (citations omitted).

## II.    Analysis

The Government contends Perez never invoked his right to counsel in the first instance because he was insufficiently clear in stating his desire for an attorney. The Court disagrees. Perez repeatedly said "yes" after Officer Johnson specifically asked him whether he wanted an attorney present "here, now" at the interview. *See* Gov't Ex. 2A at Lines 38-46. His answers came after Officer Johnson clarified that she was asking about his desire for counsel right now at the interview, not at some future date or proceedings. *Id.* at Line 38. She asked him the same clarifying question twice in quick succession. *Id.* at Lines 38-39, 41. Even after she indicated she was going to keep going despite his "yes" answers — "*So,* let me read, okay?" — he reiterated that he wanted an attorney — "Okay. But -- I'd rather have my attorney here with me." *Id.* at Lines 43-46.

Perez's responses do not reasonably suggest equivocation. At this point Officer Johnson was obligated to stop questioning him.[5] She did not. She also did not translate Perez's "yes" answers into English for Deputy Patsy. She simply ignored or overlooked his answers. Further, when she resumed talking to Perez, she admits she did not limit herself to the language of the *Miranda* warning. Hrg. Tr. 68.

The Government mischaracterizes the record in arguing that Perez's interjection of "Here now?" at Line 42 makes his request for counsel ambiguous, suggesting that he merely answered the clarifying question with a question of his own. *See* Gov't Mem. 12, 14 ("Perez's response to Officer Johnson's clarifying question 'Do you want an attorney here now?' was 'Here now?'"), Dkt. No. 117.[6] But in fact, Officer Johnson had already asked the same clarifying question in Line 38, to which Perez responded "Oh, okay. Yes. Yes, well, yes" in Line 39. When she repeated the question [Lines 39 and 41], Perez again answered "Yes" [Line 40] and also interjected "Here now?" [Line 42]. When Officer Johnson responded "*So,* let me read, okay?" [Line 43], Perez reiterated that he wanted an attorney to be present: "Okay. But -- I'd rather have my attorney here with me" [Lines 44, 46]. Perez's request for counsel was not ambiguous. Officer Johnson simply did not listen to his answers, translate them for Deputy Patsy, or acknowledge them in any way.

Supreme Court precedent does not permit continued questioning of Perez under the guise of clarification in the circumstances here, because Perez clearly invoked his

---

[5] The analysis focuses on Officer Johnson's conduct because it is undisputed that Deputy Patsy does not speak or understand Spanish and relied entirely on Officer Johnson to communicate with Perez and to tell him what Perez said during the interview. Hrg. Tr. 77-81.

[6] The Government's memorandum omits Lines 43-46 from its quoted section of the transcript pertaining to Perez's invocation of his right to counsel, stopping at Line 42 when Perez says "Here now?". Gov't Mem. 12, Dkt. No. 117.

right to counsel. There was nothing more to clarify. *Smith* rejected the notion that an officer can disregard a suspect's request for counsel and keep reading the *Miranda* warning. In *Smith* the suspect was advised of his right to counsel and invoked that right by responding "Uh, yeah. I'd like to do that." *Smith*, 469 U.S. at 93. But "[i]nstead of terminating the questioning at this point, the interrogating officers proceeded to finish reading Smith his *Miranda* rights and then pressed him again to answer their questions." *Id.* The Supreme Court held their failure to cease all questioning violated his right to counsel. The same thing happened here.

The Government argues that the earlier dialogue between Officer Johnson and Perez regarding affording an attorney and having an attorney at court proceedings infused the interview with ambiguity that carried over to his request for counsel. Gov't Mem. 10-12, Dkt. No. 117. That argument fails in the circumstances here, because Officer Johnson asked a clear and direct clarifying question (twice), and Perez repeatedly answered "yes." Clarity was achieved. To conclude otherwise would defeat the purpose of the clarifying question and the bright-line rule of *Edwards* and *Smith*.

Likewise, the fact that Perez waived his right to counsel during the first interview is not a "circumstance[] leading up to the request" in the second interview that "would render it ambiguous." *Smith,* 469 U.S. at 98. The Government argues that his previous agreement to talk is a factor showing ambiguity. Gov't Mem. 10 ("Perez had already been advised of his *Miranda* rights in the first interview, and waived them. Officer Johnson was aware th[at] Perez knew and chose to waive his rights in the first interview. Though admittedly a small factor, any ambiguity about an apparent request for an attorney in a second interview would be colored by the fact that he knowingly had *just* decided to not

request an attorney 30 minutes prior."), Dkt. No. 117. This argument has no merit. It is fundamental that a "request for counsel coming 'at *any* stage of the process' requires that questioning cease until counsel has been provided." *Smith,* 469 U.S. at 97 n.6 (quoting *Miranda,* 384 U.S. at 444-45). Officer Johnson gave Perez a *Miranda* warning in the second interview, he requested counsel, and she was required to cease questioning.

The Government also argues that Officer Johnson's "follow-up question ['Do you want an attorney here, now?'] is not the type of 'badgering a defendant into waiving his previously asserted Miranda rights' the Supreme Court was attempting to protect against in *Edwards.*" Gov't Mem. 12, Dkt. No. 117. This argument misses the mark in two respects. First, the particular problem here is not that Officer Johnson asked her clarifying question twice in quick succession, but rather that she did not stop questioning Perez when he answered "yes" both times, and still did not stop after he reiterated his desire for counsel a third time immediately thereafter.[7] By any objective measure clarity had been achieved. She also did not translate his answers into English for Deputy Patsy.

Second, the Supreme Court made clear in *Smith* that *Edwards'* "bright-line prohibition" protects against more than just aggressive "badgering." It protects against any sort of "overreaching" whether "explicit or subtle, deliberate or unintentional" that might "wear down" a suspect or "persuade him to incriminate himself" notwithstanding his earlier request for counsel. *Smith,* 469 U.S. at 98.

Furthermore, even if the Court had not found Perez clearly invoked his right to counsel, the Court finds that the Government has not satisfied its burden to show a valid

---

[7] Had Perez first answered "yes" and then answered "no" to the same question in quick succession, it would present a different scenario and analysis. But that is not what happened here.

10

waiver of *Miranda* rights under the totality of circumstances here. *See Moran v. Burbine,* 475 U.S. 412, 421 (1986) ("Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.") (internal quotations and citations omitted). As discussed above, after Perez's "yes" answers Officer Johnson said, "*So,* let me read, okay?" Gov't Ex. 2A at Line 43. But when she resumed questioning him (after summarizing information in English for Patsy), she did not in fact "read" the *Miranda* warning. Instead she stated, "*So,* your, you ca- you can talk with us now without an attorney and tell the truth, or if you want an attorney here, now, we have [sic] done. We are not going to talk to you." *Id.* at Line 51.[8] That is an inaccurate recitation of *Miranda* rights. It presents Perez with two choices: talk to them now without an attorney, or if he wants an attorney they will not talk to him. It does not advise him of his right to have an attorney present while they talk to him, *i.e.,* the very thing he had just requested moments earlier but that Officer Johnson ignored. Her statements to Perez injected ambiguity, the opposite of the clarification she testified she was seeking.

Then after he says "Mm, okay. Okay, that's fine" [Line 52], she proceeds to read the portion of the *Miranda* warning that begins with language about affording an attorney: "Okay. If you can't pay for the services of an attorney, an attorney will be appointed to you free of charge so that {he/she} can advise you before and during any questioning, if you wish" [Line 55]. He responds, "Mm-hm" [Line 56]. Although this sentence refers to

---

[8] Deputy Patsy made a statement [Line 50] immediately before this one by Officer Johnson, but the Court need not address it because Officer Johnson never translated it into Spanish for Perez. To the extent that Officer Johnson's statement to Perez in Line 51 was an effort to convey to Perez what Deputy Patsy said in Line 50, the transcript shows there are some differences between Lines 50 and 51.

counsel "before and during" questioning, Officer Johnson never returned to the key question whether he wants an attorney to be present right now during the interview. She did not remedy the inaccuracy of her earlier statement or clear up the ambiguity she had created. Perez then agrees to talk to them. Under the totality of the circumstances, the Court finds the Government has not met its burden to show that Perez was properly advised of his *Miranda* rights, understood them, and made a knowing and intelligent waiver of his right to have an attorney present during the interview. *See Miranda*, 384 U.S. at 444 (waiver must be voluntary, knowing, and intelligent).

## III.    Conclusion

Perez clearly and unequivocally invoked his right to have counsel present at the second interview. At that point the questioning should have stopped until counsel was made available to him, or until *he* initiated further conversation and waived his right to counsel. Officer Johnson did not stop questioning him. It is undisputed that this is not a case in which questioning stopped but then the suspect initiated further discussions. In addition, even if the Court had not found that Perez invoked his right to counsel, the Government has not shown by the totality of the circumstances a valid waiver of Perez's right to counsel. Accordingly, the Court recommends granting Perez's motion to suppress.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT Defendant Mariano Duran Perez's Motion to Suppress Statement [Dkt. No. 68] be GRANTED.

Dated: September 16, 2022                          s/ David T. Schultz
                                                  DAVID T. SCHULTZ
                                                  U.S. Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).